UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMARA J. TOMRELL,

    Plaintiff,   Civil Action No. 10-14657

v.   HON. MARIANNE O. BATTANI
    U.S. District Judge
    HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL   U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Tamara J. Tomrell brings this action pursuant to 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Dkt #11] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Dkt #10] be DENIED.

## PROCEDURAL HISTORY

On March 18, 2005, Plaintiff filed an original application for benefits which on April 21, 2005 was denied for insufficient evidence (Tr. 14, 75). Plaintiff filed a second

application for DIB and SSI on December 13, 2005, alleging disability as of December 31, 2001 (Tr. 70-79). Upon the initial denial of the second claim, Plaintiff requested an administrative hearing, conducted on May 8, 2008 in Oak Park, Michigan before Administrative Law Judge ("ALJ") Henry Perez (Tr. 360). Plaintiff, represented by Marc Mulder, testified (362-371) as did Vocational Expert ("VE") Lawrence Zatkin (Tr. 371-375). On August 22, 2008, ALJ Perez found Plaintiff not disabled (Tr. 285). On January 9, 2009, the Appeals Council remanded the case to ALJ Perez for further fact-finding for the following reasons:

1. 2007 hospitalization records were not included in the record.

2. A mental status examination was required to determine the severity of Plaintiff's mental conditions and work-related impairments.

3. The ALJ did not provide a rational for his determination of Plaintiff's mental impairments.

4. The ALJ did not assess Plaintiff's limitations as a result of obesity.

(Tr. 35).

ALJ Perez was directed to order a consultive psychological examination, evaluate Plaintiff's mental impairments pursuant to 20 C.F.R. § 404.1520a(c), consider the impact of obesity on Plaintiff's work-related activities, and "[i]f warranted by the expanded record, obtain supplemental evidence to clarify the effect of the assessed limitations on the [Plaintiff's] occupational base" (Tr. 36).

On August 18, 2009, ALJ Perez conducted a second hearing (Tr. 379-393). Plaintiff again testified (Tr. 379-387) as did VE Lawrence Zatkin (Tr. 387-393). On October 6, 2009,

the ALJ found that Plaintiff was not disabled (Tr. 25). On October 1, 2010, the Appeals Council upheld the ALJ's October 6, 2009 findings (Tr. 5-7). Plaintiff filed suit in this Court on November 23, 2010.

## BACKGROUND FACTS

Plaintiff, born July 17, 1963, was 46 when the ALJ issued his decision (Tr. 25, 70). She completed one year of college, working previously as a bank secretary, manager, cleaner, usher, and assembler (Tr. 85, 295, 300). Plaintiff alleges disability as a result of a neck fracture and torn ligaments of the neck (Tr. 294).

### A.     Plaintiff's Testimony

### 1. May 8, 2008 Hearing

Plaintiff testified that she currently lived with her fiancé and a friend in Pontiac, Michigan (Tr. 363). She denied working since December 31, 2001 except for a two-month stint at a fast food restaurant in 2005 (Tr. 364). She stated that she was unable to continue the work because of hand numbness and back pain (Tr. 364). In response to the ALJ's observation that her work history showed additional work from December, 2001 to December, 2003, Plaintiff conceded that she worked as an assembler, cleaner, and usher for that time period, amending her onset of disability date to December 31, 2003 (Tr. 364-366). She testified that neck pain obliged her recline periodically (Tr. 366). She alleged that since the onset of disability, she was unable to sit for more than 30 minutes, stand for more than 20, or walk for more than a block (Tr. 367).

Plaintiff testified that her daily Vicodin use made her sleepy and created

concentrational problems (Tr. 368). She estimated that she spent "two to three hours" each day napping (Tr. 368). She reported that her driver's license was currently suspended (Tr. 369). She alleged that she was only able to perform light household chores or grocery shop for 10 minutes before needing to rest (Tr. 369-370). Plaintiff noted that neck surgery had been suggested by one treating source but that she was unable to afford the operation (Tr. 370).

### 2. August 18, 2009 Hearing

Plaintiff reported that she was still treating with the same physician for herniated disks in the lower back and disc problems of the neck (Tr. 380). She testified that she was now taking medication for a bipolar disorder as well as morphine and methadone, noting that she had been taking methadone for "[a] year or two," and stating later that she had been on methadone for only two months (Tr. 381-382, 386). She alleged drowsiness as a result of methadone (Tr. 382). Plaintiff reported that she also took Xanax for anxiety and Topamax for migraines (Tr. 386). She stated that she was unable to sit for more than 30 minutes, stand for 20 minutes, or walk for more than a quarter of a block (Tr. 382). She reported that she could alternate between sitting, standing, and walking for three hours before needing to lie down (Tr. 382). She testified that she reclined up to four times each day during her waking hours (Tr. 382). She denied being able to work an eight-hour shift without lying down (Tr. 383).

Plaintiff stated that she was able to start, but not finish, light household chores (Tr. 383). She denied hobbies, seeing friends, or reading (Tr. 383-384). Plaintiff, 5' 3" and 180

pounds, stated that she had recently lost 30 pounds (Tr. 384). She estimated that she could lift only five pounds and needed a cane while walking significant distances (Tr. 385).

### B.     Medical Evidence

#### 1.  Treating Sources

In April, 2006, Plaintiff reported ongoing neck pain radiating into both arms (Tr. 209). Dr. James E. Honet noted that she had a normal gait (Tr. 210). In June, 2006, Plaintiff received nerve blocks at C3-C4, C4-C5, and C5-C6 (Tr. 132). A July, 2006 occupational therapy evaluation found that due to neck and right upper extremity pain, Plaintiff would experience problems sitting for more than 20-30 minutes at a time or lifting or carrying more than five pounds (Tr. 123). August, 2006 imaging studies of the cervical spine showed "multiple nerve root compressions" (Tr. 129). The same month, results of a cardiac stress test were unremarkable (Tr. 137). Also in August, 2006, Preston Thomas, M.D. found that Plaintiff should not stand for more than two hours and required two hours of lying down during an eight-hour workday (Tr. 247).

September, 2006 imaging studies of the spine showed small herniations at L3-L4 and L5-S1 (Tr. 126). In November, 2006, Lawrence G. Rapp, M.D. reviewed the August and September studies, noting only partial correlation between the studies and Plaintiff's report of pain (Tr. 180). Dr. Rapp stated that he was "disinclined" to consider surgery (Tr. 181). The following month, nerve conduction studies and an EMG of the upper extremities showed unremarkable results (Tr. 221-223, 229, 234). An EMG of the lower extremities showed right L5 radiculopathy (Tr. 230-232, 235).

In January, 2007, Plaintiff reported only temporary relief from steroid injections (Tr. 149). Dr. Rapp declined Plaintiff's request to fill out "disability papers" (Tr. 149). He opined that from a treatment standpoint, "[t]he next step" would be to consider a lumbar discography (Tr. 149). Undated treatment notes, apparently from the same period, state that Plaintiff was taking MS Contin, Robaxin, and Vicodin (Tr. 171). In February, 2007, Plaintiff sought emergency treatment for back pain (Tr. 140). Staff attempts to move Plaintiff elicited a pain response but she was able to move her legs by herself (Tr. 141). Plaintiff reported only "fair" relief after receiving an injection (Tr. 145). Followup notes by Dr. Rapp state that Plaintiff appeared "bright, awake, alert, oriented and appropriately conversant" with 5/5 motor strength and normal muscle tone (Tr. 143). He remarked that surgery was not "being anticipated" (Tr. 143). The same month, Plaintiff reported anxiety and depression (Tr. 218).

In November, 2007, Plaintiff was prescribed psychotropic drugs for mood swings (Tr. 258). In April, 2009, an MRI of the cervical spine showed "mild spondylosis (Tr. 343). An MRI of the lumbar spine showed a disc bulge at L3 but "no significant central canal narrowing" and a mild disc bulge at L5-S1 (Tr. 344).

### 2. Consultive and Non-treating Sources

In March, 2006, Elisa Foster, D.O. performed a consultive physical examination on behalf of the SSA (Tr. 119-122). Plaintiff reported a 1990 cervical fracture, noting further that in 1993 she tore ligaments in her neck (Tr. 119). She alleged chronic neck pain radiating into her right shoulder and hand with a limited range of motion (Tr. 119). She also reported

-6-

migraine headaches but denied "auras" (Tr. 119). Plaintiff stated that she smoked one-half a pack of cigarettes each day (Tr. 119). Dr. Foster noted that Plaintiff's gait was normal and that she was "pleasant and cooperative throughout the exam" with clear speech (Tr. 120). She did not require the use of a cane or crutches (Tr. 120). Dr. Foster opined that Plaintiff symptoms were attributable to a muscle spasm rather than a neurological injury (Tr. 122).

Also in March, 2006, a non-examining Residual Functional Capacity Assessment (physical) performed on behalf of the SSA found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for six hours in an eight hour workday; and push and pull without limitation in the lower extremities (Tr. 112). Plaintiff's ability to push and pull in the *upper* extremities was deemed limited due to shoulder and neck problems (Tr. 112). She was limited to frequent (as opposed to *constant*) balancing, stooping kneeling, crouching, and climbing of ramps and stairs; occasional crawling; and precluded from all climbing of ladder, ropes, or scaffolds (Tr. 113). Her manipulative limitations consisted of occasional overhead reaching with the right arm (Tr. 114). The Assessment found the absence of visual, communicative, or environmental limitations (Tr. 114-115).

In April, 2009, F. Qadir, M.D. performed a consultive psychiatric evaluation of Plaintiff on behalf of the SSA (Tr. 333). Plaintiff reported that in the past year, she had tried unsuccessfully to walk in front of traffic (in an apparent suicide attempt) and was placed in a psychiatric hospital for two weeks (Tr. 333). Plaintiff's self esteem was deemed "low," but she was in touch with reality with a well-organized thought process (Tr. 334). Dr. Qadir

assigned Plaintiff a GAF of 48[1] (Tr. 335). Dr. Qadir also assessed Plaintiff's work-related abilities, finding moderate deficiencies in making, understanding, and carrying out instructions and the ability to make complex decisions (Tr. 337). He found further that Plaintiff experienced marked limitations in the ability to respond appropriately to work situations or routine changes, finding Plaintiff dependent on narcotics (Tr. 338).

### C.     Vocational Expert Testimony

#### 1. May 8, 2008 Hearing

VE Lawrence Zatkin classified Plaintiff's former work as a secretary as semiskilled at the sedentary exertional level; bank teller, semiskilled/light to medium; and assembly, cashiering, ushering, cleaning, and crew member work as unskilled/light[2] (Tr. 372). Zatkin stated that the bank teller skills could be transferred to the sedentary jobs of reconciliation clerk and account payable clerk (5,000 positions in the metropolitan area of Detroit) (Tr. 372-

---

[1] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR*) (4th ed.2000).

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

373).   The ALJ then posed the following question to the VE:

> Taking claimant's age, education and work experience into account, assume that such a person has an exertion limitation of lifting 20 pounds occasionally, 10 pounds frequently.  If we impose further limitations of moderately limited in pushing and pulling with the upper extremities, occasional reaching overhead with the right, upper extremity, no climbing ladders, ropes or scaffolds, occasional crawling and putting this individual at the semiskilled level, could such a person be expected to perform Claimant's past relevant work?

(Tr. 373).  The VE replied that given the above limitations, the individual would be unable to perform Plaintiff's past relevant work as a secretary and the (light) work of a bank teller (Tr. 373).  The VE stated that if the same individual were limited to lifting 10 pounds occasionally and five pounds frequently with a sit/stand option, she would be unable to perform any past relevant work but could perform the unskilled jobs of cashier, information clerk, and surveillance monitor (4,500) and bench work consisting of packaging, inspecting, and assembling (5,200)(Tr. 374).  The VE found that if Plaintiff's testimony regarding her exertional limitations were credited, the bench work job numbers would be reduced by 50 percent (Tr. 374).  He found that if Plaintiff's testimony regarding her non-exertional limitations, (pain, concentrational problems, and need to nap) were fully credited, she would be unable to perform any work due to her need to recline multiple times each day (Tr. 375).

### 2.  August 18, 2009 Hearing

The VE, stating that he had reviewed the previous record, found that skills acquired through Plaintiff's former work as a bank teller transferred to the positions of reconciliation clerk, billing clerk, and receivable clerk (Tr. 389).  He stated that skills acquired through the

work of secretary were transferrable to jobs in data input, record keeping, management skills, and transcription skills, stating that 25,000 of such jobs existed in the metropolitan area of Detroit (Tr. 389).

The ALJ then posed the following hypothetical question to the VE, taking into account Plaintiff's age, education, and work experience:

> [A]ssume that such . . . a person has the exertional limitation of lifting 20 pounds occasionally, 10 pounds frequently. Let me impose further limitations of moderately limiting in pushing and pulling with the upper extremities, occasional reaching overhead with the right, upper extremity, no climbing ladders, ropes or scaffolds, occasional kneeling and crawling, jobs that would provide for routine production and stress, simple job assignments and the person would be marked in the ability to handle change in the work setting. Putting this individual at the unskilled level, could such a person be expected to perform Claimant' past relevant work?

(Tr. 389-390). The VE testified that the individual would be unable to perform Plaintiff's past relevant work or jobs using transferrable skills but could perform the unskilled jobs of machine tending, sorting, packaging, inspecting, assembly, "feeding and off bearing," janitorial work, and office cleaning (20,000) (Tr. 390). The VE found that if the individual were also limited by a sit/stand option, she could perform the work of a surveillance monitor, information clerk, and cashier (4,500) (Tr. 391). The VE stated that if Plaintiff's non-exertional limitations were credited, she would be unable to perform any work, due to the need to lie down multiple times each day (Tr. 392). The VE indicated that his testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") except for findings regarding the sit/stand option which were based on his professional experience (Tr. 392).

### D. The ALJ's October 6, 2009 Decision[3]

Citing Plaintiff's medical records, ALJ Perez determined that she experienced the severe impairments of "degenerative disc disease of the cervical, lumbar and lumbosacral spine; cervical spondylosis; lumbar spondylosis; obesity; anxiety; depression; and a history of marijuana use," finding however that none of the conditions met or medically equaled one of the impairments found in 20 C.F.R. Part 404 Appendix 1 Subpart P (Tr. 17).

The ALJ found that Plaintiff retained the Residual Functional Capacity to perform sedentary work with the following limitations:

> [N]o lifting more than ten pounds occasionally and five pounds frequently; jobs that allow for a sit/stand option at will; only occasional crawling; no climbing ladders, ropes, or scaffolds; moderately limited in pushing and pulling with upper extremities; and occasional ability to reach overhead with the right upper extremity. Mentally, Claimant is limited to jobs that do not require more than routine production and stress as well as simple job assignments. In addition, claimant is limited to only routine changes in the work setting.

(Tr. 19).

(Tr. 15-16). Adopting the VE's job numbers in response to the hypothetical question (including the added sit/stand option) the ALJ found that although Plaintiff was unable to perform any past relevant jobs, she was able to work as a cashier, information clerk, and surveillance monitor (Tr. 24).

---

[3] The October 6, 2009 decision states the discussion of existing medical records found in the earlier, August 22, 2008 determination should be incorporated into the latter opinion (Tr. 20 *citing* 277-285). However, the earlier the Step One through Five determinations, reviewed by the undersigned, are superceded by the October 6, 2009 findings and are thus omitted from the present discussion.

ALJ Perez discounted Plaintiff's allegations of disability, noting that imaging studies showed only "mild" abnormalities of the spine (Tr. 21). Despite Plaintiff's allegations of drowsiness, the ALJ observed that treating records did not include complaints of medication side effects (Tr. 21). The ALJ rejected Dr. Thomas' August, 2008 opinion letter on the basis that it was supported only by Plaintiff's subjective allegations of limitation (Tr. 21).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services,* 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services,* 884 F.2d 241, 245 (6th Cir. 1989).

### **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

### **ANALYSIS**

#### A. The Hypothetical Question

Plaintiff contends that the ALJ erred by including only a sit/stand option in the hypothetical question, rather than the more restrictive sit/stand *at will* limitation. *Plaintiff's Brief* at 7-9. She points out that the hypothetical question is inconsistent with the RFC found in the administrative opinion containing the "at will" option, which would allow Plaintiff to

change position at any time rather than at prescribed intervals. *Id.* (citing Tr. 19). Citing SSR 96-9p, she notes that the hypothetical question's reference to a generic sit/stand option does not imply an *at will* sit/stand option. *Id.* at 9. She argues, in effect, that the failure to include the *at will* sit/stand limitation in the hypothetical question invalidates the VE's responding job testimony. *Id.*

A hypothetical question constitutes substantial evidence only if it accounts for the claimant's physical and mental impairments. *Varley v. Commissioner of Social Security,* 820 F.2d 777, 779 (6th Cir. 1987). In *Webb v. Commissioner of Social Sec.*, 368 F.3d 629 (6th Cir.2004), while rejecting the notion that an ALJ is required to list all of a claimant's maladies verbatim in the hypothetical question, nonetheless acknowledged that "[t]he hypothetical question ... should include an accurate portrayal of [a claimant's] individual physical and mental impairments." (internal citations omitted) *Id.* at 632 (citing *Varley,* 820 F.2d at 779 (6th Cir. 1987)).

Plaintiff is correct that a sit/stand option, stated either in the RFC or hypothetical question should include the required frequency of position changes. *See* SSR 96-9,1996 WL 374185, *7 (July 2, 1996)("The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing"). Thus, the imposition of a sit/stand *at will* requirement in the hypothetical question would be the most restrictive of all the sit/stand limitations.

Plaintiff's argument should nonetheless be rejected. Although the question to the VE (unlike the RFC) did not state that the sit/stand option was "at will," VE Zatkin's ensuing

-14-

testimony indicates that he interpreted the hypothetical question to include the "at will" sit/stand option. After stating that the hypothetical limitations would allow the individual to perform work as a surveillance monitor, information clerk, and cashier, the VE described the sit/stand option posed by the ALJ as follows: "[E]ven though the job is designed to be done seated, nothing prevents [] the worker from continuing to do it in an upright or standing position" (Tr. 392). The VE's finding that the jobs of surveillance monitor, information clerk, and cashier could be done in either a standing or sitting position (thus allowing the individual to change position whenever he/she wanted) describes an at will sit/stand option, rather than the ability to change positions at prescribed intervals.

Further, while Plaintiff argues that the omission of the term "at will" from the text of the hypothetical question invalidates the VE's job responses, he does not state how the inclusion of the term "at will" in the hypothetical question would have changed the job findings. Because the VE's job findings incorporate the limitation of an at will sit/stand option (consistent with the RFC) this argument is unavailing.

### B. Weight Accorded to Medical Opinions

Plaintiff argues next that the ALJ erred by rejecting Dr. Thomas' August, 2006 opinion. *Plaintiff's Brief* at 10-14. Citing *Hensley v. Astrue,* 573 F.3d 253, 266-267 (6th Cir. 2009), she contends that the ALJ erroneously discounted the treating physician's finding that she needed to recline for two hours in an eight-hour workday. *Id.* (citing Tr. 247). On a related note, she also argues that the ALJ improperly discounted Dr. Qadir's April, 2009 finding that she experienced a marked ability to respond appropriately to changes in the work

environment. *Plaintiff's Brief* at 14-15 (citing Tr. 338). Plaintiff asserts that the ALJ improperly attributed Dr. Qadir's "marked" finding to her use of prescription drugs. *Id.*

### 1. Dr. Thomas' August 2006 Opinion

The ALJ's rejection of Dr. Thomas' August, 2006 treating source opinion is well supported and explained.[4] He discounted Dr. Thomas' finding that Plaintiff was obliged to lie down for two hours of an eight-hour workday, noting first, that "no [previous] treatment records document work restrictions" (Tr. 21). He also observed that "Dr. Thomas failed to make notations of any findings on clinical examinations that translate into functional limitations" (Tr. 21). The ALJ reasonably inferred that Dr. Thomas' opinion "relied quite heavily" on Plaintiff's subjective complaints, noting the absence of record support for the conclusion that she need to lie down for two of each eight hours (Tr. 21). Citing Dr. Thomas' earlier treating notes, the ALJ noted that the letter was tailored to Plaintiff's request for a disability opinion (Tr. 21 citing 248). The ALJ's well supported rejection of the "recline for two hours" opinion also forecloses Plaintiff's related argument that her need to lie down for two hours of every eight limited her to part-time work. *Plaintiff's Brief* at 12-14.

---

[4]

"If the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009) (internal quotation marks omitted)(citing *Wilson v. CSS,* 378 F.3d 541, 544; 20 C.F.R. § 404.1527(d)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391–392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson,* at 547; 20 C.F.R. § 404.1527(d)(2).

Contrary to Plaintiff's additional argument that the ALJ erred by not stating the "length and frequency" of her treating relationship with Dr. Thomas, the ALJ noted elsewhere in the opinion that Plaintiff had received long term, regular treatment from Dr. Thomas (Tr. 20-21). More generally, in arguing that the ALJ did not provide sufficient reasons for discounting Dr. Thomas' letter, Plaintiff provides no case law or regulatory support for the argument that the ALJ was required to include a list *all* of the factors found in 20 C.F.R. § 404.1527(d)(2)) in the administrative opinion.[5] Plaintiff's argument on this point is particularly weak, given that the ALJ's reasons for rejecting Dr. Thomas' opinion are unrelated to either the length or frequency of treatment.

### 2. Dr. Qadir's April, 2009 Assessment

Here, Plaintiff faults the ALJ for attributing Dr. Qadir's finding of a marked work-related limitation to dependence on pain medication. *Plaintiff's Brief* at 14 (citing Tr. 23, 338). She argues that if indeed the ALJ found that she was dependent on pain medication, such a limitation ought to have been considered in creating the RFC and assessing her credibility. *Id.* at 14-15.

Plaintiff's argument is a bit of a red herring. First, in discounting Dr. Qadir's finding of a marked limitation, the ALJ did not himself find that prescription drug use created

---

[5] An ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion." *Wilson,* at 544; 20 C.F.R. § 404.1527(d)(2).

marked limitations. Rather, the ALJ expressed puzzlement at the "marked" finding, stating that "[i]t [was] unclear based on the totality of Dr. Qadir's assessment as well as his notations" (Tr. 23). He then cited Dr. Qadir's written comment that Plaintiff "'definitely has a dependence issue to long term [narcotics] use,'" reasonably inferring that Dr. Qadir's "marked" finding was based on this comment (Tr. 23 citing 338). The ALJ did not otherwise find that narcotics dependence created workplace limitations. Thus, his rejection of Dr. Qadir's "marked" finding is consistent with the administrative opinion as a whole.

Moreover, even assuming that the ALJ's rejection of the "marked" limitation finding was not supported by substantial evidence, it would be a harmless error at most. The ALJ's hypothetical question at the second hearing includes a "marked" limitation "in the ability to handle change in the work setting" (Tr. 389-390). Because at Step Five, the jobs cited by the VE could be done by an individual with such a limitation, the ALJ's later rejection of Dr. Qadir's finding is a moot point.

In closing, I note that my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's legitimate limitations or personal problems. However, based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary

Judgment [Dkt #11] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Dkt #10] be DENIED. Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Date: November 29, 2011

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on November 29, 2011.

                                          s/Johnetta M. Curry-Williams
                                        Case Manager